**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **PLAINTIFF** ) | |
| **v.** ) | **Case No. 08 CR 325** |
| ) | **Judge Joan Lefkow** |
| **TERRANCE SEWELL** ) | |
| ) | |
| **DEFENDANT** ) | |

**DEFENDANT SEWELL'S MOTION TO DISMISS COUNT II OF
INDICTMENT ON BASIS THAT 18 U.S.C. §922(G) IS UNCONSTITUTIONAL
AND ON COMMERCE CLAUSE GROUNDS**

Now comes Defendant Terrance Sewell, by and through his attorney and moves this Court to dismiss Count II on two grounds: 1) the statutory basis of this count, 18 U.S.C. §922(g) is unconstitutional in light of the Supreme Court's recent decision in *District of Columbia v. Heller* (*"Heller"*), ___ U.S. ___128 S.Ct. 2783, 2817-22 (2008) holding that the right to keep and bear arms is a fundamental right; and 2) the Commerce Clause requirement has not been properly alleged in the indictment in that more is required than the firearm moved within interstate commerce at some point in its existence. *See U.S. v. Lopez* (*"Lopez"*), 514 U.S. 549 (1995)*, U.S. v. Morrison* (*"Morrison"*), 529 U.S. 598 (2000), and *Jones v. United States*, 529 U.S. 848 (2000). However, this argument has been rejected repeatedly by the Seventh Circuit. *See e.g. Wesela v. U.S.*, 223 F.3d 656, 659-60 (7th Cir. 2000), *U.S. v. Mitchell*, 299 F.3d 632, 634-5 (7th Cir. 2002) and *U.S. v. Lemons*, 302 F.3d 769, 772 (7th Cir. 2002).

In support of this motion, Mr. Sewell first addresses the constitutionality of

18 U.S.C. §922(g) in light of the Supreme Court's decision in *Heller*, 128 S.Ct. 2783 and then discusses the Commerce Clause argument.

### 18 U.S.C. §922(g) is Not Narrowly Tailored to Meet Important Governmental Interests As Required by a Strict Scrutiny Analysis To Infringe Upon the Fundamental Rights Protected by the 2nd Amendment

In *Heller*, 128 S.Ct. 2816-17 the Supreme Court determined that the right to keep and bear arms is a fundamental right protected by the Constitution in much the same way as freedom of speech, the Free Exercise Clause, the right to be free from searches without probable cause and the right to vote. In doing so, the majority noted, in what was arguably *dicta* that the right was not absolute. *Id.* ("nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons"). *See also U.S. v. Emerson*, 270 F.3d 203, 262 (5th Cir. 2001).

The question left unanswered by the majority was what level of scrutiny should courts apply in determining whether a particular prohibition is consistent with the protection of a fundamental right. Certainly, the Court rejected Justice Breyer's attempt to create a new standard–"the interest-balancing" test. *Heller*, 128 S.Ct. at 2821. In rejecting this test, the Court said, *id*:

> We know of no other enumerated constitutional right whose core protection has been subjected to a freestanding "interest-balancing" approach. The very enumeration of the right takes out of the hands of government-even the Third Branch of Government-the power to decide on a case-by-case basis whether the right is really worth insisting upon. A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all. Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad.

2

Clearly, the standard for consideration whether a statutory prohibition impermissibly infringes upon a fundamental right is strict scrutiny. *See e.g. Williams v. Rhodes*, 393 U.S. 23, 31 (1968) ("the decisions of this Court have consistently held that 'only a compelling state interest in the regulation of a subject within the State's constitutional power to regulate can justify limiting First Amendment freedoms.'"); *Skinner v. Oklahoma, ex rel. Williamson*, 316 U.S. 535, 536 (1942); *Shapiro v. Thompson*, 394 U.S. 618, 634 (1969); *Dunn v. Blumstein*, 405 U.S. 330, 338-343 (1972). This requires a statutory prohibition that "is narrowly tailored to serve significant governmental interests." *Ward v. Rock Against Racism* 491 U.S. 781, 782 (1989).

However, there is nothing to support that 18 U.S.C. §922(g) prohibition against possession of a firearm by a felon is sufficiently narrow to meet what is the obvious significant government interest of preventing firearms being used to commit crimes. The felon in possession statute is not narrowly tailored in that it restricts all persons with even one prior state law felony from possessing a firearm without any legislative findings that such a blanket prohibition will serve the obvious governmental interest at stake. For that reason, the felon in possession statute on which Count II rests cannot survive constitutional muster under the Supreme Court's decision in *Heller* and Count II must be dismissed because it is based on an unconstitutional statute.[1]

---

[1] The Seventh Circuit has not yet decided a case on the constitutionality of the felon in possession statute since *Heller*. However, prior to *Heller*, it held in *U.S. v. Price*, 328 F.3d 958, 961-62 (7th Cir. 2003) that the felon in possession statute would survive a constitutional challenge even if the Second Amendment protected individual rights to bear arms.

### The Felon in Possession Statute Does not Properly
### Invoke Commerce Clause Jurisdiction

In *U.S. v. Lopez* ("*Lopez*"), 514 U.S. 549 (1995)*, U.S. v. Morrison*

("*Morrison*"), 529 U.S. 598 (2000), and *Jones v. United States*, 529 U.S. 848 (2000),

the Supreme Court brought to an end a nearly sixty-year streak of decisions

upholding federal legislation under the regulatory authority of the Commerce

Clause.  The latter two cases made clear that *Lopez* was not an aberration and that

Congress's Commerce Clause power is significantly more limited than previously

understood.  In *Lopez*, the Supreme Court held that 18 U.S.C. § 922(q), which

prohibited knowing possession of a firearm within a school zone, exceeded

Congress's power under the Commerce Clause.  514 U.S. at 567.  The Court

evaluated the statute with respect to only the third category of activity that

Congress may regulate, i.e., activities that substantially affect interstate commerce,

after noting that the first two categories were not applicable to the statute in

question.  *Id.* at 559.

The Court evaluated four factors in concluding that § 922(q) did not regulate

an activity that substantially affects interstate commerce.  First, the Court observed

that it has upheld a wide variety of congressional acts regulating intrastate

economic activity where the activity "substantially affected" interstate commerce.

*Id.*  However, the Court concluded that § 922(q) is "a criminal statute that by its

terms has nothing to do with 'commerce' or any sort of economic enterprise, however

broadly one might define those terms."  *Id.* at 561.  Accordingly, the Court held that

4

the statute "cannot . . . be sustained under our cases upholding regulations of activities that arise out of or are connected with a commercial transaction, which viewed in the aggregate, substantially affects interstate commerce." *Id.*

Second, the Court noted that § 922(q) contains "no express jurisdictional element which *might* limit its reach to a discrete set of firearm possessions that additionally have an explicit connection with or effect on interstate commerce." *Lopez*, 514 U.S. at 562 (emphasis added). With respect to this factor, the Court also noted in *Morrison* that "[s]uch a jurisdictional element *may* establish that the enactment is in pursuance of Congress' regulation of interstate commerce." 529 U.S. at 612 (emphasis added).

Third, the Court noted that neither § 922(q) nor its legislative history contained express congressional findings regarding the effects upon interstate commerce of gun possession in a school zone. *Lopez*, 514 U.S. at 562. The Court acknowledged that Congress normally is not required to make formal findings as to the substantial burdens that an activity has on interstate commerce. *Id.* However, the Court emphasized that the existence of such findings would enable the Court to evaluate the legislative judgment that the activity in question substantially affected interstate commerce, even though no such substantial effect was plainly visible. *Id.* at 563.

Fourth, the Court rejected the government's argument that possession of a firearm in a school zone may result in violent crime and that violent crime can be

expected, in turn, to affect the functioning of the national economy through the cost of violent crime on society, a reduction in willingness of individuals to travel to unsafe areas, and an adverse impact on the learning environment. *Id.* at 563-64. The Court emphasized that if it were to accept the government's "cost of crime" argument, Congress could "regulate not only all violent crime, but all activities that might lead to violent crime, regardless of how tenuously they relate to interstate commerce." *Lopez*, 514 U.S. at 564. The Court concluded that accepting the "cost of crime" or "national economy" argument would leave us "hard pressed to posit any activity by an individual that Congress is without power to regulate." *Id.*

"But, as has been recognized in other cases, the "'mere presence of a jurisdictional element does not in and of itself insulate a statute from judicial scrutiny under the Commerce Clause or render it per se constitutional.'" *United States v. Rodia*, 194 F.3d 465, 472 (3d Cir. 1999), *cert. denied*, 120 S. Ct. 2008 (2000) (quoting *U.S. v. Bishop*, 66 F.3d 569, 585 (3rd Cir. 1995)). To the contrary, courts must inquire further to determine whether the jurisdictional element "would ensure, through case-by-case inquiry, that the [regulated conduct] affects interstate commerce." *Lopez*, 514 U.S. at 561. No such inquiry was ever made in the this Court's precedent cited above.

The question that finally must be addressed is whether the jurisdictional element of § 922(g) actually ensures that the conduct regulated by the statute "substantially affects interstate commerce." *Lopez*, 514 U.S. at 559. The answer to

that question is plainly no.  Whether or not a particular firearm ever moved across state lines at some point in time during its existence, the intrastate possession by a felon of a firearm is not a commercial activity and it does not have a substantial impact upon interstate commerce.  *See The Amended Gun-Free School Zones Act,* 50 Duke L.J. at 644 ("[P]revious movement in interstate commerce has nothing to do with whether a particular act of possession affects interstate commerce; the item's history, therefore, should not affect the statute's constitutionality.");  *Commerce Clause in the Cross-Hairs*, 48 Stanford L. Rev. at 1456 n.145 ("It is difficult, if not impossible, to argue that gun possession relates to commerce.  . . . How does the inclusion of a jurisdictional element enhance the connection between mere gun possession and commercial enterprise?")

Moreover, "[t]o infer federal jurisdiction over any item which at one time has traveled through interstate commerce is to invite federal regulation of almost all state activities . . . [since] virtually all products of modern commerce have at one time or another seen the borders of a foreign state."  Carlo D'Angelo, Note, *The Impact of United States v. Lopez Upon Selected Firearms Provisions of Title 18 U.S.C. § 922*, 8 St. Thomas L. Rev. 571, 584 (Spring 1996).  As Chief Judge Becker explained in his dissenting opinion in *Bishop*, if a "meaningless interstate commerce provision" is sufficient for purposes of the Commerce Clause, then Congress may pass a "federal law outlawing the theft of a Hershey kiss from a corner store in Youngstown, Ohio . . . on the basis that the candy once traveled in

interstate commerce to the store from Hershey, Pennsylvania." *Bishop*, 66 F.3d at 596 (Becker, J., dissenting).  Similarly, Congress could "enact a federal law requiring students in private schools to read their homework assignments, so long as the government establishes that the textbooks were published in another state." *Id.*  Thus, to uphold a statute on the basis of a jurisdictional element, such as the one at issue here, is to "convert congressional authority under the Commerce Clause to a general police power of the sort retained by the States" and to destroy the "distinction between what is truly national and what is truly local," *Lopez*, 514 U.S. at 567-68.

In sum, § 922(g)'s jurisdictional element does not ensure that the activity regulated – the intrastate possession of firearms – has a substantial affect upon interstate commerce.  Accordingly, that element cannot insulate the statute from a constitutional challenge.  Section 922(g) is not a proper exercise of Congress's power under the Commerce Clause and, accordingly, the § 922(g) charge should be dismissed on the ground that this unconstitutional statute does not confer federal jurisdiction over this case.  However, as noted above, the Seventh Circuit has repeatedly held otherwise.

## Conclusion

Wherefore, Mr. Sewell prays that this Court dismiss Count II.

Respectfully submitted,

s/Steven Saltzman
Attorney for Defendant Sewell

8

Steven Saltzman
122 South Michigan Avenue, Ste. 1850
Chicago, Illinois   60603
(312) 427-4500
Date: August 13, 2008

## PROOF OF SERVICE

I,  Steven Saltzman, an attorney hereby certifies that  on August 13, 2008 in accordance with the Fed.Crim.P. 49, Fed.R.Civ.P.5 and LR5.5, and the General Order on Electronic Case Filing (ECF), the above stated motion was served pursuant to the district court's ECF system as to ECF filers.

s/Steven Saltzman

Steven Saltzman
122 S. Michigan Ave., Ste 1850
Chicago, IL  60603
312-427-4500